UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Julie McBride,<br><br>            Plaintiff,<br><br>      v.<br><br>Halliburton Company, Inc.<br>    1401 McKinney Street, Suite 2400<br>    Houston, TX 77010;<br><br>Kellogg, Brown & Root, Inc.<br>    350 North St. Paul Street, Suite 2900<br>    Dallas, TX 75201;<br><br>Shadow Sloan, and<br><br>Vinson & Elkins.<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 1:08-cv-01154 (CKK) |

MOTION BY DEFENDANTS HALLIBURTON COMPANY, INC. AND
KELLOGG BROWN & ROOT, INC. TO DISMISS; OR IN THE ALTERNATIVE,
TO STAY PENDING COMPLETION OF ARBITRATION

Come now defendants Halliburton Company, Inc., and Kellogg, Brown, & Root, Inc., by

counsel, and for their motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil

Procedure; or in the alternative, to stay  this case pending completion of an arbitration initiated

and prosecuted by plaintiff in California, refer to the accompanying memorandum of points and

authorities.

WHEREFORE, these Defendants respectfully request that the Court dismiss this case with prejudice; or in the alternative, stay this case pending completion of the arbitration commenced and prosecuted by plaintiff in California.

ORAL HEARING REQUESTED

/s/Frederick W. Chockley III
Frederick W. Chockley III (366800)
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5304
Tel. (202) 861-1500
Fax: (202) 861-1783
FChockley@Bakerlaw.com

Michael B. McDonnell
McDonnell & Associates APLC
2040 Harbor Island Dr., Suite 202
San Diego, CA  92101
Tel. (619) 294-4230
Fax: (619) 294-4237

Attorneys for Defendants
Halliburton Company, Inc. and Kellogg,
Brown & Root, Inc.

<u>STATEMENT PURSUANT TO RULE 7(m)</u>

Counsel for defendants Halliburton Company, Inc. and Kellogg, Brown & Root, Inc. attempted multiple times to confer by telephone with counsel for plaintiff to resolve this matter prior to filing this motion.

By: */s/Frederick W. Chockley III*
    Frederick W. Chockley III (366800)
    Baker & Hostetler LLP
    Washington Square, Suite 1100
    1050 Connecticut Avenue, N.W.
    Washington, D.C. 20036-5304
    Tel. (202) 861-1500
    Fax. (202) 861-1783
    FChockley@Bakerlaw.com

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, THAT ON August 13, 2008, an electronic copy of the foregoing

Motion and accompanying memorandum of points and authorities will be served on counsel via

the United States District Court's Electronic Case Filing system.

A copy was also served via United States Postal Service to:

> L. Todd Kelly
> The Kelly Law Firm, P.C.
> One Riverway, Suite 1150
> Houston, Texas  77056
> Tel. (713) 255-2055
> Fax. (713) 523-5939
>
> Paul Waldner
> Vickery, Waldner & Mallia, L.L.C
> One Riverway, Suite 1150
> Houston, Texas  77056
> Tel. (713) 526-1100
> Fax. (713) 523-5939

> /s/Frederick W. Chockley III
> _____
> Frederick W. Chockley III

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Julie McBride, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:08-cv-01154 (CKK) |
| Halliburton Company, Inc., et al., | ) |
| Defendants. | ) |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS; OR IN THE ALTERNATIVE,
TO STAY PENDING COMPLETION OF ARBITRATION

1.    Rule 12(b)(6), Federal Rules of Civil Procedure.

2.    Federal Arbitration Act, 9 U.S.C. § 2.

INTRODUCTION

This is essentially a retaliatory lawsuit wherein Plaintiff attempts to retaliate against

Defendants for their absolutely privileged actions taken during an arbitration that was decided in

their favor.[1] As such, Plaintiff's action against Defendants is barred by the litigation privilege.

The instant action arises from Defendants' disclosure to the United States District Court for the

District of Columbia in pleadings in Plaintiff's *qui tam* lawsuit, that Plaintiff had made a demand

for arbitration, that Plaintiff made specific allegations in said arbitration, and that the arbitration

had been resolved in KBR's favor. Plaintiff is essentially arguing that KBR should not have been

---

[1] Although Plaintiff has named herein Defendants Halliburton Company, Inc. and Kellogg, Brown & Root, Inc. (sometimes referred to herein collectively as "KBR"), she was employed by Service Employees International, Inc., a foreign subsidiary of KBR, Inc.  KBR, Inc. is a former subsidiary of Halliburton.  KBR has responded on behalf of Halliburton in the pending arbitrations, notwithstanding Plaintiff's naming the incorrect party in the arbitrations.

permitted to defend itself by arguing Res Judicata and/or Collateral Estoppel. Plaintiff zealously litigated this issue for months in a JAMS arbitration up until the hearing date of July 14, 2008.

Further, Plaintiff's filing of this lawsuit before this Court amounts to forum shopping. Plaintiff filed this action shortly after Defendants' hotly contested Protective Order was granted by the arbitrator in the JAMS arbitration. Now, Plaintiff has represented to Defendants and to the JAMS arbitrator that should she not be able to continue to pursue this action under seal, she will proceed with the JAMS and AAA arbitrations. Evidently, each time Plaintiff fails to achieve the results she desires she will file in a new forum and argue that Defendants have no right to defend themselves.

I.

STATEMENT OF FACTS

A.    Procedural History

Plaintiff made a demand for Arbitration with Conflict Prevention and Resolution ("CPR") in December of 2005 asserting claims arising from her employment with SEII, a foreign subsidiary of KBR, in Iraq. In the course of discovery, Plaintiff obtained, over KBR's objection, the sexual harassment complaint of another KBR employee. With the complaint, Plaintiff also received a related email entitled "alleged assault" regarding that complaint.

The arbitration hearing (the "2006 Arbitration) was held in Los Angeles, California from June 27 through June 30, 2006. Arbitrating the dispute was Joyce Ann Mitchell ("Arbitrator Mitchell") at CPR. At the hearing, Plaintiff called the individual who made the above-described sexual harassment complaint as a witness. That witness, who had made the decision not to pursue her claim, was dismayed that Plaintiff had been able to obtain access to her written

statement, and that witness made her discomfort known to Arbitrator Mitchell. Arbitrator Mitchell subsequently ordered that the witness's testimony, as well as any related documents, be maintained in confidence, and not disclosed to anyone outside the arbitration hearing.

On July 20, 2006, Arbitrator Mitchell issued an award denying Plaintiff's claims.

On October 20, 2006, Plaintiff filed a motion to vacate the 2006 Arbitration award in the United States District Court in Los Angeles. Plaintiff attached a copy of Arbitrator Mitchell's award to her motion. She served her motion, along with the attachments, on KBR. Plaintiff redacted her name as the pro se complainant. She left intact Halliburton's name as the Respondent, the names, positions and work locations of 11 witnesses, including the name of the witness whom Arbitrator Mitchell had ordered not disclosed and the names of KBR's counsel, in-house counsel, and legal assistant. Plaintiff also attached to her motion a copy of the sexual harassment complaint of another KBR employee as well as the email entitled "alleged assault," both with the employee's name and the name of the accused redacted. Plaintiff claims to have "specifically requested that the documents be captioned 'Seal over Seal,'" but the documents, including the attachments, were filed-stamped by the Court and made a part of the public record. She later withdrew her motion to vacate.

Plaintiff filed a Qui Tam lawsuit against KBR in the United States District Court for the District of Columbia. This Qui Tam claim included claims for matters already adjudicated in the 2006 Arbitration. On January 17, 2007, KBR moved to compel arbitration of the employment-related claims. KBR's motion included the argument that McBride had waived any challenge to the validity of her arbitration agreement by invoking the arbitration process in the 2006

Arbitration. In support of this argument, KBR included Plaintiff's notice of arbitration for the 2006 Arbitration, and disclosed that the entire arbitration had been decided in favor of KBR.

Then, Plaintiff filed a second arbitration, this one before JAMS, alleging intentional infliction of emotional distress with respect to the judicially privileged communications made while defending the Qui Tam action. *See* Demand for Arbitration before JAMS, submitted herewith as Exhibit A. Claimant made a motion to amend her complaint before JAMS in an effort to allege additional causes of action. Her motion, in that regard, was denied. Plaintiff then brought yet another action against KBR before the American Arbitration Association. KBR's Motion for Summary Judgment in the action before AAA is pending.

In the meantime, the JAMS arbitration progressed. The matter was set for hearing. After Plaintiff, over KBR's objection, was permitted to call KBR's predecessor counsel as witnesses in the matter, the hearing was postponed so that KBR's new counsel could prepare for hearing. Both sides conducted and concluded discovery, which included both written discovery and depositions. The hearing in the JAMS matter was again postponed after Plaintiff represented to the arbitrator and to Respondent that she wished to be represented by counsel. Then, on the eve of the hearing, once all transportation and lodging had been arranged for, Plaintiff brought a motion to dismiss without prejudice. KBR opposed that motion. Plaintiff brought a motion to dismiss with prejudice. KBR opposed that motion to the extent that they requested findings of fact by the arbitrator. On the morning of the hearing of the JAMS arbitration, Plaintiff, for the first time, informed Respondent and the arbitrator that she had filed this action. The JAMS arbitration is still pending.

B.     <u>McBride's Employment with SEII and her Agreement to Arbitrate</u>

Plaintiff is a former employee of Services Employees International, Inc. ("SEII"). She was hired to work in support of KBR's contract with the United States Department of Defense (the "LOGCAP Contract").[2] She worked for SEII until approximately March 2005, when she was terminated.

When she was hired by SEII, McBride executed an employment agreement that outlined the general terms and conditions of her employment with SEII. *See* Employment Agreement, submitted herewith in pertinent part as Exhibit B. The agreement contains a clause obligating McBride to resolve all employment disputes in accordance with Halliburton's Dispute Resolution Program (the "DRP"). Paragraph 26 of the Employment Agreement provides, in pertinent part:

> ...You also agree that you will be bound by and accept as a condition of your employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference. You understand that the Dispute Resolution Program requires, as its last step, that any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claim arising in the workplace, you have against other parent or affiliate of Employer, must be submitted to binding arbitration instead of to the court system.
> It is expressly understood that, in the case of any controversy described above, all parent, subsidiary and affiliate or associated corporations of Employer, and of their officers, directors, employees, insurers and agents are third party beneficiaries to this provision and are entitled to invoke, enforce and participate in arbitration pursuant to this provision.

Plaintiff also signed a "New Hire/Rehire" form that contained a similar arbitration provision. Specifically, the form provides:

---

[2] LOGCAP, which is an abbreviation for Logistics Civil Augmentation Program, refers to the program under which the Department of Defense retained Halliburton and certain Halliburton affiliates to perform specified civil services in support of military operations.

I also agree that I will be bound by and accept as a condition of employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference. I UNDERSTAND THAT THE DISPUTE RESOLUTION PROGRAM REQUIRES, AS ITS LAST STEP, THAT ANY AND ALL CLAIMS THAT I MIGHT HAVE AGAINST THE COMPANY RELATED TO MY EMPLOYMENT, INCLUDING MY TERMINATION, AND ANY AND ALL PERSONAL INJURY CLAIMS, ARISING IN THE WORKPLACE, I HAVE AGAINST ANY OTHER PARENT OR AFFILIATE OF THE COMPANY BE SUBMITTED TO BINDING ARBITRATION INSTEAD OF THE COURT SYSTEM. I also agree that any employment contract or any other agreement which is inconsistent with the provisions of this notice or Dispute Resolution Program is absolutely void unless entered into in writing by the Chief Executive Officer.

C.      The Halliburton Dispute Resolution Program

The Halliburton Dispute Resolution Program provides an effective and fair means of finally resolving all employment disputes. The dispute resolution process culminates in binding arbitration before an independent and neutral arbitrator. The DRP facilitates resolution of disputes without the expense and delay of litigation, permits representation of the employee by legal counsel, provides for discovery in accordance with the Federal Rules of Civil Procedure, and authorizes an award of attorney's fees to employees who prevail in the arbitration. The company pays all administrative expenses of the arbitration process except for a $50 filing fee. Under its Legal Consultation Plan, the DRP will also pay up to $2,500 per year to help employees cover the costs of consulting with an attorney of their choice about their legal rights.

The DRP does not restrict or modify an employee's substantive rights under any law or statute and places no limitation on available remedies. The DRP brochure similarly explains that, "in arbitration, it's possible for you to seek or receive any award you might seek through the court system." Thus, all employees of Halliburton-related companies can obtain the same relief in arbitration that they can in court.

<u>LEGAL POINTS AND AUTHORITIES</u>

A.    <u>Plaintiff's Claims are Barred By The Litigation Privilege</u>

The Governing Law clause in Plaintiff's Employment Agreement with Defendants states, in pertinent part, "This Agreement is formed in the State of Texas, and shall be governed by and construed in accordance with the laws of the State of Texas.…" *See* Exhibit B at ¶ 25.

Texas law is well settled that communications in the course of judicial proceedings are absolutely privileged and cannot serve as the basis of a lawsuit in tort, regardless of the negligence or the malice with which they are made. *James v. Brown* 637 S.W. 2d 914, 916 (Tex. 1982). *See Finkelstein, Thompson & Lourghran, et al. v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 338 (D.C. 2001) (same). This absolute privilege is a rule of nonliability and applies even though the statements are not relevant, pertinent, or material to the issues involved in the case in which they are uttered. *Darrah v. Hinds*, 720 S.W. 2d 689, 691 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.). *See Brown v. Collins*, 402 F.2d 209, 212 (D.C. Cir 1968) (the requirement that a defamatory statement have 'some relation' to the proceeding is "a standard broader than legal relevance"). It is the nature of the absolute privilege that malice is immaterial. "Whereas malice dissolves a qualified privilege, the persistence of an absolute privilege does not turn on the presence or absence of good faith." *Prappas v. Meyerland Cmty. Imp. Ass'n,* 795 S.W.2d 794, 799 (Tex.App.—Houston [14[th] Dist.] 1990, writ denied). *See Finkelstein, Thompson & Lourghran,* 774 A.2d at 338 ("The intent of the privilege is not…to encourage lawyers to defame, nor to protect lawyers who do so in bad faith, though in some instances that may be a regrettable…side effect of recognizing the existence of the privilege").

Although most cases addressing the judicial communication privilege involve claims of libel or slander, Texas courts have applied the privilege to claims arising out of communications made in the course of judicial proceedings, regardless of the label placed upon the claim. *Laub v. Pesikoff,* 979 S.W.2d 686, 689-90 (Tex. App.—Houston [1st Dist] 1998, pet. denied) (holding claims including intentional infliction of emotional distress and conspiracy to defraud plaintiff of his property by false affidavits in support of summary judgment were barred by the judicial communications privilege regardless of how the claims were cast); *Morales v. Murphey*, 908 S.W.2d 504, 505-06 (Tex.App.—San Antonio 1995, Writ Denied)(holding that judicial communication privilege precludes claims for among other things, intentional infliction of emotional distress and defamation).

This privilege extends to any statements made by the judges, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pretrial hearings, depositions, affidavits, and any of the pleadings or other papers in the case. *James,* 637 S.W. 2d at 916-17. *See Oparaugo v. Watts, et al.*, 884 A.2d 63, 80-81 (D.C. 2005) (same); In re Spikes, 881 A.2d 1118, 1123 (D.C. 2005) ("Submitting a memorandum of law in support of a motion filed in the course of a legal proceeding" is protected by the judicial privilege). The privilege not only extends to statements made during litigation, but also to statements made in contemplation of and preliminary to judicial proceedings. *See Watson v. Kaminski,* 51 S.W.3d 825, 827 (Tex.App.—Houston [1st Dist] 2001, no pet.). *See  Finkelstein, Thompson & Lourghran*, 774 A.2d at 338, 345; *Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6, 13-14 (D.D.C. 1990).

The litigation privilege is interpreted liberally so as to protect the integrity of judicial proceedings by protecting a hallmark of our judicial system - the zealous representation of clients. *See Finkelstein, Thompson & Lourghran*, 774 A.2d at 338, 345. The judicial privilege has been applied to letters written by lawyers to potential defendants prior to suit. *Watson,* 51 S.W. 3d at 827-28. *See Conservative Club of Washington*, 738 F. Supp. at 14 (the threat of a lawsuit was made "to the very individuals who would have an interest in the outcome of such litigation"). The privilege has also been applied to the delivery of pleadings in a pending litigation to the news media after the suit is filed. *Hill v. Herald Post Publ'g Co., Inc.* 877 S.W.2d 774, 782-84. Just as the mere delivery of pleadings in pending litigation to the news media does not amount to publication outside of the judicial proceedings that would result in waiver of the absolute privilege, a press release advising the media that a lawsuit has been filed, including a basic description of the allegations, does not amount to publication outside the judicial proceedings resulting in a waiver of the absolute privilege. *Dallas Indep. Sch. Dist. v. Finlan,* 27 S.W. 3d 220, 238-40 (Tex.App.—Dallas 2000).

Whether an alleged defamatory communication is related to a proposed or existing judicial proceeding is a question of law. *Thomas v. Bracey,* 940 S.W. 2d 340,343. *See Conservative Club of Washington*, 738 F. Supp. at 13. When deciding the issue, "the court must consider the entire communication in its context, and must extend the privilege to any statement that bears some relations to an existing or proposed judicial proceeding." *Russell v. Clark,* 620 S.W.2d 865, 870. (Tex.Civ.App.1981). *See Arneja v. Gildar*, 541 A.2d 621, 624 (D.C. 1988). All doubts should be resolved in favor of the relevancy of the statement. *Id. See Arneja v. Gildar*, 541 A.2d at 624.

Here it is not alleged that KBR delivered the pleadings to the news media or that KBR issued a press release. The only allegations are that KBR provided, to the Federal Court, a basic description of Plaintiff's claims along with the arbitrator's ruling on said claims. These statements made by KBR were directly related to litigation and were necessary to defend KBR against serial litigation and blatant forum shopping. Regardless of how Plaintiff casts her claims, and regardless of Plaintiff's allegations of negligence and/or malice, KBR's statements fall well within the absolute privilege of judicial immunity.

For the foregoing reasons, KBR respectfully requests that this Court dismiss this action in its entirety as to these Defendants for failure to state a claim upon which relief can be granted. Should this honorable Court find such a ruling inappropriate at this time, KBR requests that this matter be stayed pending the resolution of the pending arbitration which Plaintiff had initiated and prosecuted up until the morning of hearing on the matter.

B.      <u>Plaintiff's Agreement to Arbitrate Is Enforceable Under the Federal Arbitration Act</u>

Plaintiff's employment agreement provides that the arbitration clause shall be governed by and construed in accordance with the Federal Arbitration Act ("FAA"). Section 2 of the Federal Arbitration Act provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract.

9 U.S.C. § 2. Thus, the FAA mandates the enforcement of arbitration agreements where such agreements (1) are part of a contract or transaction involving commerce and (2) are valid under

general principles of contract law. *Id.; Doctor's Associates, Inc. v. Casarotto,* 116 S.Ct. 1652, 1657 (1996). The arbitration agreement between Plaintiff and SEII satisfies both requirements and is therefore enforceable under the FAA.

C.    <u>Plaintiff Has Waived Any Argument that she is not Obligated to Arbitrate Her Claims</u>

Furthermore, "an agreement to arbitrate an issue need not be express...it may be implied from the conduct of the parties." *Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355, 1356 (9th Cir. 1983); *see also Teamsters Local Union No. 764 v. J.H. Merritt and Co.,* 770 F.2d 40, 42 (3d Cir. 1985) (citing *Daniel*); *Howard University v. Metropolitan Campus Police Officer's Union*, 519 F. Supp. 2d 27, 33 (D.D.C. 2007) (citing *J.H. Merritt and Co.*). In *Daniel,* the Ninth Circuit reasoned that Daniel's conduct manifested an intent to arbitrate his dispute with his union because he sent a representative to the arbitration who listened to the union's evidence, presented limited evidence himself, and requested a second continuance. Two weeks later, Daniel's representative sent a letter to the arbitration board, claiming Daniel had no obligation to arbitrate and refusing to attend future hearings. The arbitrator issued a decision adverse to Daniel, who then appealed, arguing the arbitrator had no such authority.

The Ninth Circuit confirmed the arbitration award, holding that "(w)e have long recognized a rule that a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result." *Daniel*, 724 F.2d at 1357. The court held that even though Daniel attempted to deny the arbitrator's authority before a decision was issued, "(i)t would be unreasonable and unjust to allow Daniel to challenge the legitimacy of the arbitration process, in which he had voluntarily participated over a period of several months, shortly before the arbitrator announced her decision." *Id.*

In the instant case, Plaintiff initiated the arbitration, attended hearings, drafted motions, took lengthy depositions and prepared her trial brief. Although Plaintiff filed suit in Federal Court before the arbitrator could make an award, an award would still be binding on Plaintiff under *Daniel*. "Once a claimant submits to the authority and pursues arbitration, he cannot suddenly changer his mind and assert lack of authority." *Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994).

Plaintiff's voluntary initiation of arbitration should be interpreted as a waiver of any objection she may have had over the authority of the arbitrator to render a binding decision. The Fifth Circuit has reasoned that "(o)n whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbitrator defines his authority without regard to whether the parties had a prior obligation to submit the dispute." *Piggly Wiggly Operators Warehouse, Inc. v. Piggly Wiggly Operators Warehouse Independent Truck Driver's Union Local No. 1,* 611 F.2d 580, 584 (5th Cir. 1990).

Similarly, the DC Circuit has held:

"First, arbitration is a matter of consent; if a party submits to arbitration without objecting to the arbitrator's jurisdiction, then it may fairly be said to have consented to the arbitration, and the other party, having gone forward with the proceeding, may fairly be said to have relied upon that consent. See United Indus. Workers, 987 F.2d at 168 ("Once the parties have mutually agreed to refer a matter to an arbitrator, they are bound by his decision and may not later challenge his authority to resolve the claim")."

*Howard University v. Metropolitan Campus Police Officer's Union*, 512 F.3d 716, 720-21 (D.C. Cir. 2008).

Lastly, the Supreme Court has held that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver,

delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth Inc.,* 473 U.S. 614, 626 (1985).

Plaintiff argues that her contractual arbitration agreement with SEII did not require that Plaintiff file her allegations in arbitration. Defendants maintain that Plaintiff has a clear duty to arbitrate pursuant to the written agreements. Defendants further assert that Plaintiff's argument is moot because, as the Supreme Court held in *Mitsubishi*, any doubt concerning the arbitrable issues will be resolved in favor of arbitration. *Id.* Whether or not the written agreements between a terminated employee and her former employer are sufficient to constitute a memorialized agreement to arbitrate claims, the agreement to arbitrate will be implied from Plaintiff's conduct, as more fully described above.

Plaintiff has waived any objection to the arbitrator's authority to decide her claims, and this honorable Court should dismiss or stay this action pending completion of arbitration.

<u>CONCLUSION</u>

Defendants are alleged to have done nothing more than defend themselves before a Court by asserting allegations that Plaintiff had made against them, and the manner in which such claims were resolved. Such statements are absolutely privileged and on that basis, these Defendants respectfully request that this Court dismiss this current action in its entirety. In the alternative, these Defendants respectfully request that this Court stay this matter pending the hearing thrice continued and again set. It would be patently unfair to allow Plaintiff to prosecute this matter in arbitration up until hearing and then relitigate the action before this Court while staying that Arbitration.

Dated: <u>August 13, 2008</u>

<div style="margin-left: 50%;">

*/s/ Frederick W. Chockley III*
_____
Frederick W. Chockley III (366800)
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5304
Tel. (202) 861-1500
Fax. (202) 861-1783
FChockley@Bakerlaw.com

Michael B. McDonnell
McDonnell & Associates APLC
2040 Harbor Island Dr., Suite 202
San Diego, CA  92101
Tel. (619) 294-4230
Fax. (619) 294-4237

Attorneys for Defendants
Halliburton Company, Inc. and Kellogg,
Brown & Root, Inc.

</div>

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, THAT ON August 13, 2008, an electronic copy of the foregoing

Memorandum will be served on counsel via the United States District Court's Electronic Case

Filing system.

A copy was also served via United States Postal Service to:

L. Todd Kelly
The Kelly Law Firm, P.C.
One Riverway, Suite 1150
Houston, Texas  77056
Tel. (713) 255-2055
Fax. (713) 523-5939

Paul Waldner
Vickery, Waldner & Mallia, L.L.C
One Riverway, Suite 1150
Houston, Texas  77056
Tel. (713) 526-1100
Fax. (713) 523-5939

<div align="right">

*/s/ Frederick W. Chockley III*
Frederick W. Chockley III

</div>

# EXHIBIT A



THE RESOLUTION EXPERTS®

RECEIVED

SEP 2 7 2007

JAMS

# Demand for Arbitration Before JAMS

TO RESPONDENT:  Halliburton, Inc.

(Address)   4100 Clinton Drive   (Name of the Party on whom Demand for Arbitration is made)

| (City) Houston | (State) TX | (Zip) 77020 |
|---|---|---|
| (Telephone) | (Fax) | (E-Mail) |

Representative/Attorney (if known):   Shadow Sloan
(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)

(Address)   1001 Fannin Street, Suite 2500

| (City)   Houston | (State)   Texas | (Zip)   72002-6760 |
|---|---|---|
| (Telephone)   713-758-2222 | (Fax) | (E-Mail) |

FROM CLAIMANT (Name):   Julie McBride

(Address)   REDACTED

| (City)   REDACTED | (State)   REDACTED | (Zip)   REDACTED |
|---|---|---|
| (Telephone)   REDACTED | (Fax)   REDACTED | (E-Mail)   REDACTED |

Representative/Attorney of Claimant (if known):   NA
(Name of the Representative/Attorney for the Party Demanding Arbitration)

(Address)

| (City) | (State) | (Zip) |
|---|---|---|
| (Telephone) | (Fax) | (E-Mail) |

## NATURE OF DISPUTE

Claimant hereby demands that you submit the following dispute to final and binding arbitration (a more detailed statement of the claim(s) may be attached):

Defendant violated the Employment Agreement, and terms of their own Dispute Resolution Program, by disclosing confidential information in regard to employment issues that were previously Arbitrated.

Effective 01/01/2007
Resolution Centers Nationwide • 1.800.352.5267 • www.jamsadr.com
(c) copyright 2006 JAMS. All rights reserved.



**THE RESOLUTION EXPERTS®**

# Demand for Arbitration Before JAMS

## ARBITRATION AGREEMENT

This demand is made pursuant to the arbitration agreement which the parties made as follows (cite location of arbitration provision & attach two (2) copies of entire agreement).

See attached Employment Agreement at #26.

Effective 01/01/2007
Resolution Centers Nationwide • 1.800.352.5267 • www.jamsadr.com

(c) copyright 2006 JAMS. All rights reserved.



**THE RESOLUTION EXPERTS®**

# Demand for Arbitration Before JAMS

## CLAIM & RELIEF SOUGHT BY CLAIMANT

Claimant asserts the following claim and seeks the following relief (include amount in controversy, if applicable):

Claimant Asserts the following Claims:

1. Breach of Contract
2. Fraud
3. Misrepresentation
4. Invasion of Privacy
5. Intentional Infliction of Emotional Distress
6. Contempt of Court

## RESPONSE

Respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules.  Send the original response and counter-claim to the claimant at the address stated above with two (2) copies to JAMS.

Effective 01/01/2007
Resolution Centers Nationwide • 1.800.352.5267 • www.jamsadr.com
(c) copyright 2006 JAMS.  All rights reserved.



THE RESOLUTION EXPERTS®

# Demand for Arbitration Before JAMS

## REQUEST FOR HEARING

JAMS is requested to set this matter for hearing at:_____

(Preferred Hearing Location)


Signed (Claimant): _Julie McBride_____   Date: 9/23/07
                    (may be signed by an attorney)

Print Name: _Julie McBride_____


**Please include a check payable to JAMS for the required initial, non-refundable $400 per party deposit to be applied toward your Case Management Fee and submit to your local JAMS Resolution Center.**

Effective 01/01/2007
Resolution Centers Nationwide • 1.800.352.5267 • www.jamsadr.com
(c) copyright 2006 JAMS. All rights reserved.



**THE RESOLUTION EXPERTS®**

# Demand for Arbitration Before JAMS

## COMPLETION OF THIS SECTION IS REQUIRED FOR CLAIMS INITIATED IN CALIFORNIA

A. Please check here if this ☒ IS  or ☒ IS NOT  a CONSUMER ARBITRATION as defined by California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e):

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below.  "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

    1)  The contract is with a consumer party, as defined in these standards;

    2)  The contract was drafted by or on behalf of the non-consumer party; and

    3)  The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

    1)  An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;

    2)  An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;

    3)  An individual with a medical malpractice claim that is subject to the arbitration agreement; or

    4)  An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.

B. If this is an EMPLOYMENT matter, Claimant must complete the following information:

Effective January 1, 2003, private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

Annual Salary:

        REDACTED

C. Consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees. In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information.

Effective 01/01/2007
Resolution Centers Nationwide • 1.800.352.5267 • www.jamsadr.com
(c) copyright 2006 JAMS. All rights reserved.

# EXHIBIT B

# EMPLOYMENT AGREEMENT
(Foreign Service – Single Status Assignment)
## US CITIZEN

**Employee: <u>Julie McBride</u>**　　　　　　　　**Date: <u>November 11, 2004</u>**

 REDACTED

This Employment Agreement sets forth the terms and conditions of employment between you and Service Employees International Inc., ("Employer") for your employment in support of the U.S. Army's Area of Operation under the U.S. Contract DAAA09-02-D0007. This Employment Agreement includes the Data Sheet that is attached. In the event of any conflict between these documents, the terms of the Employment Agreement will control.

## GENERAL TERMS AND CONDITIONS

1. You agree to perform services of the job classification shown on the Data Sheet, and other services within your capability as requested by Employer. You may terminate your employment at any time, subject to loss of compensation, if any, as specified herein, and Employer may likewise terminate your employment at any time, for any reason, including for its sole convenience. Earned but unpaid compensation will be paid if Employer terminates your employment for its convenience or for any other reason.

2. This Agreement and the attached Data Sheet show specific terms and conditions of your initial employment assignment, the identity of the corporation that will be your Employer, the position for which you are initially assigned/hired and location of the project, your rate of pay and other applicable benefit programs. In addition, you are responsible for compliance with the Halliburton Code of Business Conduct, Corporate Policies and Kellogg Brown & Root Business Practices.

3. Except for insurance, Employer shall have no liability in damages whatsoever to you for injuries, disabilities, detention, death or other losses arising out of, or in connection with terrorism, war (declared or undeclared), rebellion, labor strike or unrest, civil strife or acts of the civil authority or armed forces of any nation; provided, however, in the event of capture, you will be paid in accordance with the Specific Terms and Conditions of Capture and Detention. In an emergency, Employer may, at its discretion, elect to evacuate you to some secure location. Your sole recourse for any injury, illness, or death arising out of or in the course of your employment under this Agreement shall be as determined under the provisions of the Defense Base Act.

4. Your compensation is identified on the attached Data Sheet. Each pay period, you will be paid by applying the amount earned, after deducting mandatory tax withholdings, your authorized employee benefit charges, and any advances, reserves, or other obligations to Employer. Your pay will be sent to the location you designate on the check disposition form.

5. Payments shall be made on a monthly basis. Wage payments shall be subject to deductions required by law, deductions provided for in this Agreement and such deductions as you from time to time may authorize in writing.

6. Employer will pay your travel expenses from Houston, Texas or your designated Point of Origin to the Assignment Location and your return to your Point of Origin at the most economical and practical airfare available. No other relocation or repatriation expenses will be provided.　·Note: In accordance with Federal Acquisition Regulation 52.247-63 -- Preference for U.S.-Flag Air Carriers, all flights must be on a U.S. Flag Air Carrier unless the exceptions identified in the regulation are met and properly documented.

7. Since your employment is terminable at any time by either party, Employer assumes no responsibility for any loss related to your decision to dispose of real or personal property or to resign from other employment or business arrangements. Any such arrangements that you make are made at your risk, on your own best judgment.

8. You understand and agree that the employment relationship is at will and that there is no guarantee of continued employment or any commitment on the part of Employer, either express or implied, to renew this

LOGCAP SEII Employment Agreement
21 Oct 2003

1 of 13 pages

KBR00065

### 24. Severability

If any provision to this Agreement is determined to be invalid or unenforceable, it shall not affect the validity or enforceability of the other provision, which shall remain in full force and effect.

### 25. Governing Law

This Agreement is formed in the State of Texas, and shall be governed by and construed in accordance with the laws of the State of Texas; except that with respect to all matters or disputes related to the validity or enforceability of provision 26 below, all issues shall be governed by and construed in accordance with the Federal Arbitration Act.

### 26. Claims/Disputes

In consideration of your employment, you agree that your assignment, job or compensation can be terminated with or without cause, with or without notice at any time at your option or at Employer's option. You also agree that you will be bound by and accept as a condition of your employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference. You understand that the Dispute Resolution Program requires, as its last step, that any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claim arising in the workplace, you have against other parent or affiliate of Employer, must be submitted to binding arbitration instead of to the court system.

It is expressly understood that, in the case of any controversy described above, all parent, subsidiary and affiliate or associated corporations of Employer, and of their officers, directors, employees, insurers and agents are third party beneficiaries to this provision and are entitled to invoke, enforce and participate in arbitration pursuant to this provision.

Should any party refuse to arbitrate or refuse to cooperate in arbitration, the remaining party or parties may proceed with arbitration in the absence of the party so refusing. Notices in respect to arbitration may be transmitted by any reasonable means calculated to convey actual knowledge of the unresolved matter or dispute. With respect to Employer and any affiliated companies, notice by

registered mail shall be deemed reasonable and sufficient when mailed to:

> Dispute Resolution Program Administrator
> Halliburton Company
> 4100 Clinton Drive
> Houston, TX  77020-6299

Employee's Initial _____

### 27. Group Insurance and Other Benefits

You acknowledge that you have been briefed and understand the available group insurance plans and the terms and conditions of other benefit programs available from the Employer.

You understand that if you are assigned to certain overseas projects, you may be required to enroll yourself and eligible family members in appropriate group insurance plans offered by Employer.

Employee's Initial _____

### 28. Agreement and Release:

You agree that any baggage or personal effects that are left on the premises or in the care and/or custody of Employer after your termination of employment shall be deemed abandoned after 30 days from the date of such termination, unless you specifically advise Employer to the contrary, in writing, within such period. Should you fail to remove personal property within 30 days of termination or within 30 days after giving such notice, you authorize Employer to sell the same as agent and remit the proceeds to the last known address, less the cost and/or expense incidental to the storage and sale.

Employee's Initial _____

### 29. Termination

If for any reason, your employment is terminated, you agree to complete the required out-processing procedure that includes the signing of exit documents and the return of all badges, vehicle stickers, employee identification cards, tools, books, supplies, money, and any other property issued to you.


Employee's Initial _____

KBR00076

30. **Conformance with Code of Business Conduct**

You specifically acknowledge and agree that you have been provided a copy of the Halliburton Code of Business Conduct, and that you are responsible for reading it in its entirety and complying with the provisions contained therein and any future updates to the Code of Business Conduct, available on the web at http://www.halliburton.com/about/business_conduct.jsp or you can contact your local Human Resources Department for a copy. Furthermore, you acknowledge that you have been specifically briefed and understand the Employer's policy on equal employment opportunity, including the prohibition against sexual harassment and discrimination or harassment based on race, sex or sexual orientation, national origin, age, disability or veteran status.



31. **Repayment**

You agree that you may be discharged without notice. You agree that if the cause for your discharge involves monetary or material loss to Employer, or the serious potential for such loss, Employer may withhold all compensation due you, to the fullest extent permitted by law, until restitution has been made.



32. **Modification in Writing**

No modifications to this Agreement are effective unless in writing, signed by you and the Project General Manager or his designee. This Agreement supersedes any and all prior understandings, promises, or agreements of any kind, whether oral or written, except special commitments and/or agreements approved by management as stated below.

33. **Special Provisions**

34. **Understanding of Terms**

You acknowledge that you have read this Employment Agreement, and fully understand, agree, and consent to the terms and conditions of this Agreement.

Executed at <u>Houston</u> this <u>11th</u> day of <u>November</u> and effective as of_____ NOV 2 2 2004

**ACCEPTED**

Employee : _Julie McBride_____

Social Security Number : _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___

Date : _____

Kellogg Brown & Root

By _____

Title   <u>HR Manager</u>
Date:   <u>November 11, 2004</u>

KBR00077

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Julie McBride, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )    Civil Action No. 1:08-cv-01154 (CKK) |
| Halliburton Company, Inc., et al. , | ) ) |
| Defendant. | ) ) ) |

ORDER

Upon consideration of the motion by defendants Halliburton Company, Inc. and Kellogg,

Brown & Root, Inc. to dismiss; or in the alternative, to stay pending completion of arbitration,

any opposition thereto, and oral argument, if any, it is by the Court this ___ day of September

2008

ORDERED, that defendants' motion be, and it is hereby, granted; and

FURTHER ORDERED, that the complaint be, and it is hereby, dismissed with prejudice.

_____
Honorable Colleen Kollar-Kotelly
United States District Judge

Copies to:

Frederick W. Chockley III
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5304

Michael B. McDonnell
McDonnell & Associates APLC
2040 Harbor Island Dr. Suite 202
San Diego, CA 92101

Megan E. Hills, Esq.
Williams & Connolly LLP
725 12th Street, N.W.
Washington, D.C. 20005

Stephanie M. Morris
1660 L. Street, N.W., Suite 506
Washington, D.C. 20036

L. Todd Kelly
The Kelly Law Firm, P.C.
One Riverway, Suite 1150
Houston, Texas  77056

Paul Waldner
Vickery, Waldner & Mallia, L.L.C
One Riverway, Suite 1150
Houston, Texas  77056