UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Julie McBride, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:08-cv-01154 (CKK) |
| Halliburton Company, Inc., et al., | ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION TO STAY ARBITRATION

COME NOW Defendants HALLIBURTON COMPANY, INC., and KELLOGG, BROWN & ROOT, INC. (sometimes collectively referred to as "KBR"), by counsel, and for their memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Stay Arbitration, state as follows:

1. Rule 7(a), Rules of United States District Court for the District of Columbia.

2. Federal Arbitration Act, 9 U.S.C. § 1, et seq.

3. Motion by Defendants Halliburton Company, Inc. and Kellogg, Brown & Root, Inc. to Dismiss; or in the Alternative, to Stay Pending Completion of Arbitration, filed herein August 13, 2008 ("KBR's Motion to Dismiss").

I.

INTRODUCTION

Plaintiff's motion is devoid of any legal authority because her argument lacks any support. Any doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration. Federal policy requires that arbitration clauses be construed as broadly as possible, and Courts will compel arbitration unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. The entirety of Plaintiff's claims herein are based upon Plaintiff's disputed interpretation of a contract which she voluntarily entered into with her employer. The arbitration clauses in Plaintiff's employment contract broadly declare that any and all claims that Plaintiff might have against her employer related to Plaintiff's employment, including her termination, and any and all personal injury claims arising in the workplace she has against other parents or affiliates of her employer, must be submitted to binding arbitration instead of the court system. Moreover, by voluntarily demanding arbitration before JAMS, by making liberal use of its procedures over the course of several months, and by waiting until the eve of the hearing to raise this argument before the district court, Plaintiff has waived any right to object to the arbitrator's authority. Finally, the hearing before JAMS proceeded and has concluded. Plaintiff's motion is therefore moot.

## II.

## STATEMENT OF FACTS

### A.    Procedural History

Plaintiff made a demand for arbitration with Conflict Prevention and Resolution ("CPR") in December of 2005 asserting claims arising from her employment with SEII, a foreign subsidiary of KBR, in Iraq. In the course of discovery, Plaintiff obtained, over KBR's objection, the sexual harassment complaint of another KBR employee. With the complaint, Plaintiff also received a related email entitled "alleged assault" regarding that complaint.

2

The arbitration hearing (the "2006 arbitration") was held in Los Angeles, California from June 27 through June 30, 2006. Arbitrating the dispute was Joyce Ann Mitchell ("Arbitrator Mitchell") at CPR. At the hearing, Plaintiff called the individual who made the above-described sexual harassment complaint as a witness. That witness, who had made the decision not to pursue her claim, was dismayed that Plaintiff had been able to obtain access to her written statement, and that witness made her discomfort known to Arbitrator Mitchell. Arbitrator Mitchell subsequently ordered that the witness's testimony, as well as any related documents, be maintained in confidence, and not disclosed to anyone outside the arbitration hearing.

On July 20, 2006, Arbitrator Mitchell issued an award denying Plaintiff's claims.[1]

On October 20, 2006, Plaintiff filed a motion to vacate the 2006 arbitration award in Federal District Court in Los Angeles.[2] Plaintiff attached a copy of Arbitrator Mitchell's award to her motion. She served her motion, along with the attachments, on KBR. Plaintiff redacted her name as the pro se complainant. She left intact Halliburton's name as the Respondent, the names, positions and work locations of 11 witnesses, including the name of the witness which arbitrator Mitchell had ordered not disclosed and the names of KBR's counsel, in-house counsel, and legal assistant. Plaintiff also attached to her motion a copy of the sexual harassment complaint of another KBR employee as well as the email entitled "alleged assault," both with the employee's name and the name of the accused redacted. Plaintiff claims to have "specifically requested that the documents be captioned 'Seal over Seal,'" but the documents, including the

---

[1] KBR does not believe there is any dispute about the procedural history of the arbitration and has not submitted copies of the record in the arbitration. However, pertinent portions of the record could be submitted *in camera* if there is any dispute about KBR's description of the procedural history.

[2] Case No. CHP H-5-06H

attachments, were filed-stamped by the Court and made a part of the public record. She later withdrew her motion to vacate.

Next, Plaintiff filed a Qui Tam lawsuit against KBR in Federal District Court of the District of Columbia, case no. 1:05cv000828. This Qui Tam claim included claims for matters already adjudicated in the 2006 Arbitration. On January 17, 2007, KBR moved to compel arbitration of the employment-related claims. KBR's motion included the argument that McBride had waived any challenge to the validity of her arbitration agreement by invoking the arbitration process in the 2006 arbitration. In support of this argument, the company included Plaintiff's notice of arbitration for the 2006 Arbitration, and disclosed that the entire arbitration had been decided in favor of the company.

Then, Plaintiff filed a second arbitration, this one before JAMS, alleging intentional infliction of emotional distress with respect to the judicially-privileged communications made while defending the Qui Tam action. Claimant made a motion to amend her complaint before JAMS in an effort to allege additional causes of action. Her motion, in that regard, was denied. Plaintiff then brought yet another action against KBR in American Arbitration Association. KBR's motion for summary judgment in the action before AAA is pending.

In the meantime, the JAMS arbitration progressed. The matter was set for hearing. After Plaintiff, over KBR's objection, was permitted to call KBR's predecessor counsel as witnesses in the matter, the hearing was postponed so that KBR's new counsel could prepare for hearing. Both sides conducted and concluded discovery, which included both written discovery and depositions. The hearing in the JAMS matter was again postponed after Plaintiff represented to the arbitrator and to KBR that she wished to be represented by counsel. Then, on the eve of the

hearing, once all transportation and lodging had been arranged for, Plaintiff brought a motion to dismiss without prejudice. KBR, seeking finality, opposed that motion. Plaintiff brought a motion to dismiss with prejudice. KBR opposed that motion unless there where findings of fact by the arbitrator. On the morning of the hearing of the JAMS arbitration, Plaintiff, for the first time, informed KBR and the arbitrator that she had filed this action. By Arbitrator's order, the hearing was continued until August 25, 2008.

On August 25, 2008, the JAMS arbitrator denied Plaintiff's motion to stay the arbitration and ordered that the hearing go forward. The hearing took place on August 25-27, 2008 and has concluded.

III.

<u>PLAINTIFF'S MOTION TO STAY ARBITRATION IS PROCEDURALLY IMPROPER</u>

Plaintiff's motion cites and finds no legal support. Local Rule 7(a) requires motions to be accompanied by points and authorities and reads, in pertinent part,

> Each motion shall include or be accompanied by a statement of the specific points of law and authority that support the motion, including where appropriate a concise statement of facts.

Rule 7(a), Rules of the United States District Court for the District of Columbia. Plaintiff's Motion to Stay Arbitration is devoid of any authority whatsoever. Because Plaintiff's motion neither "includes," nor is "accompanied by a statement of the specific points of the law and authority that support the motion," and consists entirely of argumentative facts, the motion violates the Local Rules and is procedurally improper.

IV.

<u>A DISTRICT COURT'S DETERMINATION OF ARBITRABILITY OF A CLAIM</u>

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, et seq., jurisdiction by the courts to intervene into the arbitral process prior to the issuance of an award is very limited. *See Larry's United Super, Inc. v. Dean Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001). "When a party moves to compel arbitration, [the court's] role is to determine whether there is an agreement between those parties which commits the subject matter of the dispute to arbitration." *ITT Hartford Life & Annuity Ins. Co. v. Amerishare Investors, Inc.*, 133 F.3d 664, 668 (8th Cir. 1998). "[A] court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided." *Great Western Mtg. Corp. v. Peacock*, 110 F.3d 222, 230 (3d Cir. 1997), <u>cert. denied</u>, 522 U.S. 915 (1997). In making these limited determinations, courts bear in mind that the Federal Arbitration Act's "provisions manifest a 'liberal federal policy favoring arbitration agreements.'" *Larry's United Super*, 253 F.3d at 1085, (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)).

The relevant statutory provisions are Sections 2, 3 and 4 of the FAA of 1925, 9 U.S.C. §2-4. Section 2 provides that a written provision for arbitration "in any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." In Section 3, the Federal Arbitration Act provides that

'if any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall on application of one of the parties stay the trial . . . until such arbitration has been had' if the applicant is not in default in proceeding with such arbitration.'

6

*Anaconda v. Am Sugar Refining Co.*, 322 U.S. 42, 44 (1944).

Finally,

"Section 4 provides a federal remedy for a party 'aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration,' and directs the federal court to order arbitration once it is satisfied that an agreement for arbitration has been made and has not been honored."

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).  In holding that "in passing upon a §3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate," the Supreme Court stated: "In so concluding, we not only honor the plain meaning of the statute but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Id.* at 404.

In the instant action, KBR has brought a motion to stay this action until the JAMS arbitration has been completed.  *See* Motion by Defendants Halliburton Company, Inc. and Kellogg, Brown & Root, Inc. to Dismiss; or in the Alternative, to Stay Pending Completion of Arbitration, filed here in August 13, 2008 ("KBR's Motion to Dismiss").  Plaintiff has pursued these claims in the JAMS arbitration up until the morning of the hearing before making the instant challenge to the arbitrator's authority.  KBR is not in default in proceeding with the arbitration.  The arbitrator has ordered that the hearing on the merits proceed.  Under the FAA, a district court does not have the power to review an interlocutory ruling by an arbitration panel. *See Travelers Ins. Co. v. Davis*, 490 F.2d 536, 541-42 (3d Cir. 1974); *Compania Panemena Maritima v. J.E. Hurley Lumber Co.*, 244 F.2d 286, 288-89 (2d Cir. 1957).  Only after an award has been made by the arbitrator can a party seek to attack the arbitrator's determinations in court,

by moving to either vacate, modify or correct an award.  Pursuant to the FAA, KBR respectfully

requests that Plaintiff's causes of action before this Court be stayed pending the issuance of an

award and that Plaintiff's Motion to Stay the Arbitration be denied.

V.

PLAINTIFF'S CLAIMS ARE ARBITRABLE PURSUANT TO WRITTEN CONTRACT

A.    McBride's Employment with SEII and her Agreement to Arbitrate

Plaintiff was hired by Service Employees International, Inc. ("SEII") in November of

2004 to work in support of KBR's contract with the United States Department of Defense (the

"LOGCAP Contract").  *See* Motion to Dismiss Memorandum of Points and Authorities at 5 and

n.2.  She worked for SEII until approximately March 2005, when she was terminated.

When she was hired by SEII, McBride executed an employment agreement that outlined

the general terms and conditions of her employment with SEII.  The agreement contains a clause

obligating McBride to resolve all employment disputes in accordance with Halliburton's Dispute

Resolution Program.  Paragraph 26 of the Employment Agreement provides, in pertinent part:

> . . . You also agree that you will be bound by and accept as a condition of your
> employment the terms of the Halliburton Dispute Resolution Program which are herein
> incorporated by reference.  You understand that the Dispute Resolution Program requires,
> as its last step, that any and all claims that you might have against Employer related to
> your employment, including your termination, and any and all personal injury claims
> arising in the workplace, you have against other parent or affiliate of Employer, must be
> submitted to binding arbitration instead of to the court system.
> It is expressly understood that, in the case of any controversy described above, all parent,
> subsidiary and affiliate or associated corporations of Employer, and of their officers,
> directors, employees, insurers and agents are third party beneficiaries to this provision
> and are entitled to invoke, enforce and participate in arbitration pursuant to this provision.

*See* KBR's Motion to Dismiss, Memorandum of Points and Authorities at 5 and Exhibit B

thereto.

Plaintiff also signed a "New Hire/Rehire" form that contained a similar arbitration provision.  Specifically, the form provides:

> I also agree that I will be bound by and accept as a condition of employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference. I UNDERSTAND THAT THE DISPUTE RESOLUTION PROGRAM REQUIRES, AS ITS LAST STEP, THAT ANY AND ALL CLAIMS THAT I MIGHT HAVE AGAINST THE COMPANY RELATED TO MY EMPLOYMENT, INCLUDING MY TERMINATION, AND ANY AND ALL PERSONAL INJURY CLAIMS, ARISING IN THE WORKPLACE, I HAVE AGAINST ANY OTHER PARENT OR AFFILIATE OF THE COMPANY BE SUBMITTED TO BINDING ARBITRATION INSTEAD OF TO THE COURT SYSTEM.  I also agree that any employment contract or any other agreement which is inconsistent with the provisions of this notice or Dispute Resolution Program is absolutely void unless entered into in writing by the Chief Executive Officer.

See Exhibit A, submitted herewith.

B.    The Halliburton Dispute Resolution Program

The Halliburton Dispute Resolution Program (or "DRP") provides an effective and fair means of finally resolving all employment disputes.  The dispute resolution process culminates in binding arbitration before an independent and neutral arbitrator.  The DRP facilitates resolution of disputes without the expense and delay of litigation, permits representation of the employee by legal counsel, provides for discovery in accordance with the Federal Rules of Civil Procedure, and authorizes an award of attorney's fees to employees who prevail in the arbitration.  The company pays all administrative expenses of the arbitration process except for a $50 filing fee.  Under its Legal Consultation Plan, the DRP will also pay up to $2,500 per year to help employees cover the costs of consulting with an attorney of their choice about their legal rights.

The DRP does not restrict or modify an employee's substantive rights under any law or statute and places no limitation on available remedies. Rule 30 of the DRP Rules makes this clear:

> The arbitrator's authority shall be limited to the resolution of legal Disputes between the Parties. As such, the arbitrator shall be bound by and shall apply applicable law including that related to the allocation of the burden of proof as well as substantive law. The arbitrator shall not have the authority either to abridge or enlarge the substantive rights available under applicable law.

> See Exhibit B, submitted in pertinent part herewith.

The DRP brochure similarly explains that in arbitration, it is possible for a claimant to seek or receive any award they might seek through the court system. Thus, all employees of Halliburton-related companies can obtain the same relief in arbitration that they can in court.

C.     Plaintiff's Written Agreement to Arbitrate Is Enforceable Under
       the Federal Arbitration Act

Plaintiff's employment agreement provides that the arbitration clause shall be governed by and construed in accordance with the Federal Arbitration Act. Section 2 of the FAA Provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract.

9 U.S.C. § 2. Thus, the FAA mandates the enforcement of arbitration agreements where such agreements (1) are part of a contract or transaction involving commerce and (2) are valid under general principles of contract law. *Id.*; *Doctor's Assocs, Inc. v. Casarotto*, 517 U.S. 681, 688

(1996).  The arbitration agreement between Plaintiff and SEII satisfies both requirements and is therefore enforceable under the FAA.

      1.     <u>McBride's Employment Relationship with SEII Involved Commerce</u>

     The United States Supreme Court has held that the FAA's reference to commerce reflects Congress' intent to extend the FAA's coverage to the limits of the federal power under the Commerce Clause.  *Allied-Bruce Terminix Cos, Inc.. v. Dobson*, 513 U.S. 265, 268 (1995).  In so holding, the Court recognized that the determination of whether a transaction or contract "involves" commerce requires an expansive construction of the term in order to effectuate Congress' goal of encouraging alternative dispute resolution mechanisms.  *Id*. Accordingly, the Court held that a matter "involves" commerce under the FAA if it merely "affects" commerce, a standard commonly applied by the Court to situations in which it is clear that Congress intended to exercise it Commerce Clause powers to the fullest extent. *Id*.

     Section 1 of the FAA defines "commerce" as "commerce among the several States or with foreign nations . . . . " 9 U.S.C. § 1.  SEII's contractual relationships with McBride were expressly connected with an underlying contract with the United States Army, under which SEII, through employees such as McBride, provides various support services to the U.S. military's operations in Iraq.  Moreover, McBride traveled from Illinois to Houston, Texas to execute her employment agreement and then from the U.S. to Iraq to work.  Consequently, her employment relationship with SEII involved commerce under the FAA.

      2.     The Arbitration Agreement Between Plaintiff and SEII is Valid and Enforceable <u>under General Principles of Contract Law</u>

     The validity of an arbitration agreement is determined by reference to general principles of contract law.  *Casarotto*, 517 U.S. at 686-87; *see also Perry v. Thomas*, 482 U.S. 483, 492 n.9

(1987)(noting that "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally").   However, to the extent that state law carves out special rules for arbitration agreements that do not apply generally to all contracts, it is "inconsonant with, and is therefore preempted by, the federal [act]." *Casarotto*, 517 U.S. at 688.

McBride signed two distinct documents that set forth her obligation to arbitrate disputes under the DRP.  Both her employment agreement and the "New Hire/ReHire" form contained an unambiguous statement of this commitment.   And, although under the FAA there is no requirement that an arbitration clause be noted conspicuously within a contract, in this particular case, both documents highlighted the arbitration provision.   See Exhibit A and Exhibit B to KBR's motion to dismiss.

It is well established that, absent fraud or duress, a party who signs a document is conclusively presumed to have read and understood its contents.  *E.g., Paterson v. Reeves*, 304 F.2d 950, 951 (D.C. Cir. 1962) (holding that "[o]ne who signs a contract which he had an opportunity to read and understand is bound by its provisions").   This is no less true in the context of arbitration agreements.  *See Nur v. K.F.C., USA, Inc.*, 142 F.Supp.2d 48, 51 (D.D.C. 2001)(citing *Paterson* and holding that an employee's ignorance of the contents of his arbitration agreement did not preclude enforcement).

The arbitration program to which Plaintiff agreed is fair and reasonable.  The DRP does nothing more than shift the forum for resolution from the courts to arbitration.  The program does not restrict or eliminate the parties' substantive claims, defenses, or remedies.  It permits discovery in accordance with the federal rules of civil procedure.  The program provides for the

appointment of a neutral arbitrator who must issue a written award and state the reasons therefore if requested by either party. The company bears all of the costs of the arbitration process other than the $50.00 filing fee. Furthermore, Plaintiff has waived any argument that she is not obligated to arbitrate her employment claims.

VI.

PLAINTIFF HAS WAIVED ANY RIGHT SHE MAY HAVE HAD TO

CHALLENGE THE AUTHORITY OF THE ARBITRATOR

"An agreement to arbitrate an issue need not be express; . . . it may be implied from the conduct of the parties." *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1356 (9th Cir. 1983); *see also Teamsters Local Union No. 764 v. J.H. Merritt & Co.*, 770 F.2d 40, 42 (3d Cir. 1985) (citing *Daniel*); *Howard v. Metro Campus Police Officer's Union*, 519 F. Supp. 2d 27, 33 (D.D.C. 2007) (citing *J.H. Merritt and Co.*). In *Daniel*, the Ninth Circuit reasoned that Daniel's conduct manifested an intent to arbitrate his dispute with his union because he sent a representative to the arbitration who listened to the union's evidence, presented limited evidence himself, and requested a second continuance. Two weeks later, Daniel's representative sent a letter to the arbitration board, claiming Daniel had no obligation to arbitrate and refusing to attend future hearings. The arbitrator issued a decision adverse to Daniel, who then appealed, arguing the arbitrator had no such authority.

The Ninth Circuit confirmed the arbitration award, holding that "[w]e have long recognized a rule that a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result." *Daniel*, 724 F.2d at 1357. The court held that even though Daniel attempted to deny the arbitrator's authority before a

13

decision was issued, "[i]t would be unreasonable and unjust to allow Daniel to challenge the legitimacy of the arbitration process, in which he had voluntarily participated over a period of several months, shortly before the arbitrator announced her decision." *Id*.

In this instant case, Plaintiff initiated the arbitration, attended hearings, drafted motions, took lengthy depositions and prepared her trial brief.  Although Plaintiff filed suit in Federal Court before the arbitrator could make an award, an award would still be binding on Plaintiff under *Daniel*.  "Once a claimant submits to the authority of the arbitrator and pursues arbitration, he cannot suddenly change his mind and assert lack of authority." *Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994).

Plaintiff's voluntary initiation of arbitration should be interpreted as a waiver of any objection she may have had concerning the authority of the arbitrator to render a binding decision.  The Fifth Circuit has reasoned that "[o]n whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbitrator defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute." *Piggly Wiggly Operators Warehouse, Inc. v. Piggly Wiggly Operators Warehouse Indep Truck Driver's Union Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980).

Similarly, the DC Circuit has held:

First, Arbitration is a matter of consent; if a party submits to arbitration without objecting to the arbitrator's jurisdiction, then it may be fairly said to have consented to the arbitration, and the other party, having gone forward with the proceeding, may fairly be said to have relied upon that consent. *See United Indus. Workers*, 987 F.2d at 168 ("Once the parties have mutually agreed to refer a matter to an arbitrator, they are bound by his decision and may not later challenge his authority to resolve the claim").

*Howard Univ v. Metro Campus Police Officer's Union*, 512 F.3d 716, 720-21 (D.C. Cir. 2008).

Lastly, the Supreme Court has held that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting Moses H. Cone, 460 U.S. at 24-25).  *See Doctor's Assocs. Inc. v. Stuart*, 85 F.3d 975, 981 (2d Cir. 1996) (doubts regarding waiver are resolved in favor of arbitration).

Plaintiff argues that her contractual arbitration agreement with KBR did not require that she file her allegations in arbitration. The point is moot because, as the Supreme Court held in *Mitsubishi*, any doubt concerning the arbitrable issues will be resolved in favor of arbitration. *Id*. And, whether or not writings between a terminated employee and her former employer are sufficient to constitute a memorialized agreement to arbitrate claims, the agreement to arbitrate will be implied from Plaintiff's conduct.  Plaintiff has waived any objection to the arbitrator's authority to decide her claims.

VII.

<u>CONCLUSION</u>

Because Plaintiff's motion is devoid of any legal support; because arbitration clauses are to be construed as broadly as possible; because Plaintiff's claims are arbitrable pursuant to the broad arbitration clause contained in her written employment contract; and because Plaintiff has waived any right she may have had to challenge the authority of the arbitrator to issue an award,

KBR respectfully requests that this honorable Court stay Plaintiff's claims before this Court and deny Plaintiff's Motion to Stay Arbitration.

Dated:  September 4, 2008                          Respectfully submitted,


ORAL HEARING REQUESTED                    /s/Frederick W. Chockley III
                                          Frederick W. Chockley III (366800)
                                          Washington Square, Suite 1100
                                          1050 Connecticut Avenue, N.W.
                                          Washington, D.C.  20036-5304
                                          Tel. 202.861.1500
                                          Fax. 202.861.1783
                                          FChockley@Bakerlaw.com

                                          Michael B. McDonnell
                                          McDonnell & Associates APLC
                                          2040 Harbor Island Dr., Suite 202
                                          San Diego, CA  92101
                                          Tel. 619.294.4230
                                          Fax. 619.294.4237

                                          Attorneys for Defendants
                                          Halliburton Company, Inc. and Kellogg,
                                          Brown & Root, Inc.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, THAT ON September 4, 2008, an electronic copy of the foregoing

Memorandum of Points and Authorities will be served on counsel via the United States District

Court's Electronic Case Filing system. A copy was also sent via United States Postal Service to:

L. Todd Kelly
The Kelly Law Firm, P.C.
One Riverway, Suite 1150
Houston, Texas 77056

Paul Waldner
Vickery, Waldner & Mallia, L.L.C
One Riverway, Suite 1150
Houston, Texas 77056

*/s/Frederick W. Chockley III*
Frederick W. Chockley III

**EXHIBIT A**



# NEW HIRE / REHIRE

In consideration of my employment, I agree that my assignment, job or compensation can be terminated with or without cause, with or without notice at any time at the option of the Company or myself. I also agree that I will be bound by and accept as a condition of employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference. I UNDERSTAND THAT THE DISPUTE RESOLUTION PROGRAM REQUIRES, AS ITS LAST STEP, THAT ANY AND ALL CLAIMS THAT I MIGHT HAVE AGAINST THE COMPANY RELATED TO MY EMPLOYMENT, INCLUDING MY TERMINATION, AND ANY AND ALL PERSONAL INJURY CLAIMS, ARISING IN THE WORKPLACE, I HAVE AGAINST ANY OTHER PARENT OR AFFILIATE OF THE COMPANY, BE SUBMITTED TO BINDING ARBITRATION INSTEAD OF TO THE COURT SYSTEM. I also agree that any employment contract or any other agreement which is inconsistent with the provisions of this notice or Dispute Resolution Program is absolutely void unless entered into in writing by the Chief Executive Officer.

## EMPLOYEE'S SECRECY AGREEMENT

I, the undersigned employee of the Company, or applicant for employment, in consideration of my employment by it for such work as may be assigned me on this or any other job and the possible disclosure to me of certain confidential information of the Company and its Customers have agreed and do hereby agree as follows:

1. I will not use or disclose to anyone, at any time or in any manner, otherwise than in ordinary course of my employment by the Company, any trade secrets or confidential information which I learn as a result of or during employment.

2. Such "trade secrets or confidential information" shall include everything told to me in confidence as a trade secret and, also, all photographs, maps, drawings, reports, specifications, operating data, procurement or marketing information, cost data and other information relating to the details of the work and the operations and installations affected. No such information shall be released to anyone other than authorized representatives of the Company, or the Customer for whom the work is being performed, who have a need to know, either before or after completion of the work, except with the written consent of the Company and the Customer as communicated in writing to me by my Department Head.

3. This agreement shall continue during my employment by the Company, and for three (3) years thereafter.

4. I understand and agree that this agreement may be enforced by legal action for damages, injunction or otherwise, brought by the Company or by any Customer for whom the work is being performed or their assigns.

I have read this agreement carefully and agree to its provisions.

## ACKNOWLEDGEMENT

I acknowledge that I have been informed that an investigation may be made whereby information is obtained through personal interviews with my neighbors and acquaintances. This inquiry includes information as to my character, general reputation, personal characteristics or mode of living. I understand that I have the right to make a written request within a reasonable period of time for a complete and accurate disclosure of additional information concerning the nature and scope of this investigation, if made.

WITNESS
SIGNATURE *Sonya R. Sparks*

EMPLOYEE
SIGNATURE *Jm McBride*

**EXHIBIT B**

# Dispute Resolution Plan and Rules

KBR
000074

25. Communication with the Arbitrator

There shall be no communication between the Parties and the arbitrator other than at any oral hearings or conferences. Any other oral or written communications from the Parties to the arbitrator shall be directed to the A.A.A., JAMS, or CPR (and copied to the Parties) for transmission to the arbitrator, unless the Parties and the arbitrator agree otherwise.

26. Time of Award

The award shall be promptly made by the arbitrator, unless otherwise agreed by the Parties or specified by applicable law, no later than thirty (30) days from the date of the closing of the proceeding or, if applicable, the closing of a reopened proceeding.

27. Form of Award

The award shall be in writing and shall be signed by the arbitrator. The arbitrator shall write a statement of reasons for the award if requested to do so in the request to initiate proceedings or in the answering statement. The award shall be executed in any manner required by applicable law.

28. Modification of Award

On order of a court of competent jurisdiction, or on agreement of the Parties, the arbitrator shall modify any award. The arbitrator may modify an award on the motion of a Party if the arbitrator finds that the award, as rendered, is ambiguous or defective in form, or if the award requires an illegal or impossible act. These are the only circumstances under which an arbitrator shall have jurisdiction to withdraw or modify an award.

29. Settlement

If the Parties settle their Dispute during the course of the arbitration, the arbitrator may set out the terms of the settlement in a consent award.

30. Scope of Arbitrator's Authority

The arbitrator's authority shall be limited to the resolution of legal Disputes between the Parties. As such, the arbitrator shall be bound by and shall apply applicable law including that related

15

KBR
000090

to the allocation of the burden of proof as well as substantive law. The arbitrator shall not have the authority either to abridge or enlarge substantive rights available under applicable law. The arbitrator may also grant emergency or temporary relief which is or would be authorized by applicable law. The arbitrator shall be bound by and shall comply with the provisions of the Plan and Rules.

31. Judicial Proceedings and Exclusion of Liability

A. Neither A.A.A., JAMS, CPR. nor any arbitrator is a necessary Party in any judicial proceedings relating to proceedings under these Rules.

B. Neither A.A.A., JAMS, CPR. nor any arbitrator shall be liable to any Party for any act or omission in connection with any proceedings within the scope of these Rules.

C. Any court with jurisdiction over the Parties may compel a Party to proceed under these Rules at any place and may enforce any award made.

D. Parties to these Rules shall be deemed to have consented that judgment upon the award of the arbitrator may be entered and enforced in any federal or state court having jurisdiction of the Parties.

E. Initiation of, participation in, or removal of a legal proceeding shall not constitute waiver of the right to proceed under these Rules.

F. Any court with jurisdiction over the Parties may issue any injunctive orders (including preliminary injunctions) if the necessary legal and equitable requirements under applicable law are met pending the institution of proceedings under these Rules.

32. Fees and Expenses

A. The expenses of witnesses shall be borne by the Party producing such witnesses, except as otherwise provided by law or in the award of the arbitrator.

B. All attorney's fees shall be borne by the Party incurring them except as otherwise provided by law, by the Plan, or in the award of the arbitrator.

16

KBR
000091